William & Mary Appellate and Supreme Court Clinic just here to introduce Hillary Cote, a third year law student who will present an argument on behalf of the court. I thought you didn't look like a Hillary and I had no idea. These days one never knows. Ms. Cote.  My name is Hillary Cote and I represent the appellant Christopher Cantu on behalf of the estate of Robert Earl Lawrence. Lawrence went to an animal shelter to drop off a dog he found in a Walmart parking lot. He was trying to do the right thing and he ended up shot dead in front of his children. It is all on video and it couldn't be clearer. To the extent that there is any ambiguity, the district court erroneously construed the facts in the favor of Sergeant Woodruff. Specifically, the district court found, among other things, that Woodruff did not release the taser in order to draw her service weapon and shoot Lawrence, that Lawrence represented a threat to the officers, that Lawrence possessed the taser, and that Lawrence was attempting to escape. All of this is for the jury to decide. Really? Let me ask you this. If there wasn't a video, wouldn't the undisputed testimony be against your client's case? No, Your Honor. There would be some testimony that favored your client without the video. What is that? There is various testimony from the different officers as well as testimony from Mr. Lawrence's girlfriend, who was also in the car at the time, that disputes some of the facts. Switch facts that would defeat summary judgment. Is there testimony to support and tell us whose testimony that is? Is there testimony to support Mr. Lawrence's facts? Assume there was no video, and then we'll get to that. What testimony disputes the officer's testimony that he grabbed the taser, for example? Tell me what. Tell me if there was no video. What fact establishes there's a genuine issue of material fact to contradict the officer's testimony that he grabbed the taser and had control of it when she shot? From testimony that was, depositions that were given there, other than the video which shows that that is not what happened, there is no direct testimony that speaks to that, Your Honor. All right. So, but for the video, you would lose. I mean, I'm not going to take the video away from you. But for the video, you would not have a case. No, Your Honor. I think the video speaks pretty clearly for itself. Okay. Well, what about the magistrate's R&R which reached the opposite conclusion by saying that there are genuine issues of material fact throughout? Your Honor, the— You know, what was that based upon other than the video? Of course, the video was important, but there were other things, right? Yes, Your Honor. The magistrate judge's opinion considers facts throughout the encounter between Mr. Lawrence and Sergeant Woodruff beginning earlier on in the incident. So, there were material facts in dispute throughout that process. But looking specifically at the moment where Officer Woodruff drew her weapon in order to shoot Mr. Lawrence, that in that case, the magistrate judge was looking at the video and construing any ambiguities that may have existed in the video in favor of Cantu as the nonmoving party. Okay. When the facts here are viewed in the light most favorable to Cantu, the law is clear. The shooting an unarmed, non-threatening, non-fleeing individual is a clearly established violation of the Fourth Amendment. And so, the district court's opinion here that Sergeant Woodruff was entitled to qualified immunity should be reversed. This circuit has held that, as well as the Supreme Court and Tennessee v. Garner, that there is a clearly established right to be free from being shot dead when you're not a threat to officers, not fleeing, and unarmed. You know, of course, that Garner's clearly distinguishable from this case. Certainly, Your Honor. There are other cases. What's your best case of the Supreme Court or of the 11th Circuit? Because it has to be clearly established. What's your best case for this set of circumstances? Our best case, well, there's a few that were from this. You had to pick one. I had to pick one. I'd say our best case is Gilmere v. City of Atlanta, which was an individual who was struggling with officers as they were trying to arrest him. And he had previously been, the officers had responded to that scene because he was threatening an individual with a weapon. And the court held in that case that that was an excessive use of force in order to shoot him, an inappropriate use of deadly force. This circuit has required that there must be, in order to use deadly force, an officer, there must be a threat of serious harm. The use of force must be necessary to prevent escape, and an officer, if feasible, based on the time and opportunity in the situation, must provide the individual with a warning. And that is clearly established by this court in Von B. Cox. And here, Sgt. Well, of course, Von B. Cox was different in the sense that the court said, look, their argument was it would reduce danger and the threat of serious harm. But, in fact, it's undisputed that you shoot somebody in a speeding car going down a busy interstate in Atlanta, and they're all busy in Atlanta, would increase the risk of harm instead of decrease it. So you can't say that a reasonable officer would have thought that I've got to shoot this person in order to eliminate or reduce the risk of serious physical harm to others, because it would, in fact, increase it. That's what we reasoned in Von, I thought. Yes, Your Honor. The concern there, and as it relates to this case, is looking at the situation through Sgt. Woodruff's perspective. When another officer had Mr. Lawrence pinned up, bear-hugged and pinned up against a vehicle, when only the bottom half of one of his arms was free, Sgt. Woodruff had hold on the trigger and handle side of the taser, and a third officer on the scene had hold of Mr. Lawrence's free arm. Whether in that situation Sgt. Woodruff would have thought that it was reasonable, or a reasonable officer would have thought that it was appropriate to draw her weapon and shoot Mr. Lawrence without warning, which a reasonable officer in that situation would have recognized that Mr. Lawrence was not a threat to the officers, that he was not attempting to escape, and at the very least would have provided him with a warning before using it. He was attempting not to be arrested? Yes, Your Honor. Well, what's the difference for amount of force purposes for somebody who's fighting the officers so he won't be arrested and can leave and someone who's fleeing? Well, even if he was fleeing, even if this court found that he was fleeing or believed that he was fleeing. No, no. I'm asking you, what's the difference between resisting arrest so you can leave and fleeing so you can leave? The difference is, generally speaking, they could be similar depending on the situation, but looking at this specific situation, he was not fleeing in the time when Sgt. Woodruff drew her weapon in order to He was trying to get away from the officers so he could flee? No, Your Honor. He was, although he did, although he was struggling, he wasn't attempting to flee the scene. Even when he did temporarily evade officers, and you can see this on the dash cam video, he moved around to the other side of the vehicle simply to He ran around the vehicles to escape them, did he not? He moved away from them, Your Honor, but he wasn't fleeing the scene. I thought the video shows he's running around the car. Yes, Your Honor, it does. So he came back to the driver's side again eventually? He moved back around to the other side of the vehicle. He tried to flee the scene, did he? No, Your Honor. He wasn't fleeing the scene. I mean, and it's unlikely he would have. He has three children in the car, right? Exactly, Your Honor. His three children and his girlfriend were all still in the car. His car was blocked in by Officer Rhodes' vehicle once he arrived on the scene. It's not all that essential in this case, but Officer Rhodes took him or tried to apprehend him and put him into handcuffs while he was sitting on his car talking and harassing, I guess, verbally, but no physical attempt to even approach Officer Rhodes according to what is on the video. Is that a fair interpretation of that? That's correct, Your Honor. And the Supreme Court has said you can't, that's not probable cause to arrest somebody. Yes, that's correct, Your Honor. But you haven't in any way raised a question about the attempt to take him into custody. The only question here is excessive force, right? Yes, Your Honor. We brought this appeal against Sergeant Woodruff and we're, so we are...  Correct, Your Honor. So we're just challenging the use of deadly force by Sergeant Woodruff in that situation. Let me ask you, you know, Judge Marks did not accept the report and recommendation from the magistrate judge. What do you say that she did that was erroneous in not adopting the R&R? We believe that the district court judge construed the facts that either were ambiguous or we actually, some of them we believe are clear from the video that go in favor of Cantu here, that she construed these facts in favor of Sergeant Woodruff, where the magistrate judge construed them in favor of Cantu. These facts include that Sergeant Woodruff did not let go of the taser in order to draw her weapon, that Mr. Lawrence was confrontational, that he possessed the taser, that he was a threat to the officer's safety, and that he was attempting to escape at the moment that she drew her weapon in order to shoot him. And so if these facts were construed in the light most favorable to Cantu or as clearly, as generally can be clearly seen from the video, the officer would not be entitled to qualified immunity here. You said that, or at least implied that he had the authority not to be detained. He had the right not to be detained. They didn't have any basis for arresting him. Is that your position? Your Honor, when initially on, as they came onto the scene, the officers didn't have any basis for, Sergeant Woodruff did not have a basis for detaining. Once she asked him to see his license and he handed her that affidavit in lieu of a driver's license and admitted he didn't have a driver's license, she had authority to arrest him, did she not? Potentially, Your Honor, yes. Did he admit, I'm sorry, did he admit that he didn't have a driver's license? No, Your Honor, he did not, Sergeant Woodruff, and actually She had probable cause to believe he didn't because she asked for it. He said he didn't have to have a license and handed her the affidavit that he had designed. Yes, Your Honor, that's what it says. So she had probable cause to arrest him for driving without a license or to prevent him from leaving, which would involve driving without a license, which was a crime, right? Yes, Your Honor, that is a crime, and if he didn't have a license and was attempting to drive, then she would have probable cause to arrest him. However, whether she had probable cause to arrest him does not, in that situation, does not mean that she had probable cause to believe that he was a threat and believe that it would be appropriate for her to use deadly force in that situation. My time has expired. Let me ask you something on my time. I read somewhere that Woodruff changed the setting or the mode of the stun gun. Is there anything in this record to make it less incapacitating? Is there anything in this record about why she did that? Your Honor, the initial, so there are two modes for the stun gun. One is the prong deployment, which has the ability to incapacitate a person, and the second is the taser used in drive-stun mode. So they initially attempted to use prong deployment against Mr. Lawrence, and he was wearing, I believe, a thick jacket, and so they were unsuccessful. And so once that charge was initially expended, it can't be used again, and so they were using the taser in drive-stun mode because that was the, yes, Your Honor. And it also is a matter of proximity. You use a projectile when someone is far away from you, but when you're right up next to them, you want to use the probes on the end of the weapon, the taser, right? Correct. So depending on how you look at it, she used the maximum strength she had and left in the gun? Yes, Your Honor. After the initial one didn't go through the thick jacket? Yes, Your Honor, because she was using Sergeant, or excuse me, Officer Rhodes' taser. She did not have a taser of her own. Okay, thank you. Yes. Mr. White. Ma'am, police court, I'm Len White, and I represent Sergeant Adrian Woodruff. Mr. Cantu argues that the district court erred because issues of material fact remain in dispute, and those include whether or not there was probable cause to arrest Mr. Lawrence for no driver's license and whether or not a taser presents a serious enough threat to justify the use of deadly force, including matters of speculation such as whether he had the actual ability or whether it was even possible for him to use it given how he was acting. Well, it's a given, isn't it, that a taser is a nonlethal weapon? Correct, Your Honor. And particularly once you put it into a stun mode because it doesn't carry nearly the charge that it does when it's on a projectile with the wires. It's a question, Your Honor, and we would say, and Sergeant Woodruff would say, that any contention that the law was clearly established that you cannot use deadly force in a non-deadly situation and thereby you cannot use deadly force against a taser is too broad a concept to put any officer on notice about what he was going to do was unlawful. Here, they contend that there was clearly established law that, in those circumstances, she should have been on notice that the use of that force was unlawful and, as she just reiterated, her best case for that. There were others. There was the case of Salvato versus Miley. However, in Salvato, you had a plaintiff, a suspect, who was not armed and he did not attempt to take the officer's weapon. And, in fact, when he was shot, he was backing away from the officer some 10 to 15 feet, hardly materially similar to the facts here. Gilmour, their best case, involved someone who was reported as a DUI and had threatened someone with a gun. And the person who reported the threat took the officers to the residence or they found him at the residence and responded. And the suspect there was smaller, older than the officers, and was clearly intoxicated. Well, here we had three officers on the scene, not just one. And if you take a look and watch, those three officers, one was not involved except to pull the dog back a couple of times. Well, she actually ended up holding the taser. She got in at the end. Well, she held his arm. It's found on a district court and leave it to anyone who's reviewing it to judge whether or not who had the taser. Well, there's a genuine issue of fact, perhaps, on that, right? No, sir. I cannot see that at that point in time that anyone wants the taser, which was indisputably in the exclusive possession of Sergeant Woodruff, was grabbed by that point. There were two people, yes, for a moment. But who dropped it? And as good an indication as anything is, who dropped that taser and when did he drop it? And the point of that is... Or you could say, when did she drop it? No, sir. Well, I don't know that that even matters at this point. I think you would have to decide or to find or conclude that he never had it, that he never grabbed it. And I do not believe that is a reasonable observation from the evidence. And the evidence in this case is the video. Well, that's part of it. It's clearly visible in the video. That's part of it. But you also have the affidavit of the woman who grabbed his arm, and that's what she said. And then also the testimony of the officer, and that's what she said. And then there is the video itself. But one thing I think is important here is that in the context of qualified immunity, the officer needs to be on notice that on this day it was unconstitutional to arrest someone for no driver's license. He's forced to make that arrest, including a taser, and where repeated tasings were ineffectual, and that suspect grabs that taser and takes it. Well, did we have a serious underlying offense here? The underlying offense was not the cause of the shooting. The underlying offense for which he was to be arrested, and they spent 12 minutes. Officer Woodruff spent 12 minutes just on the video, just on the part that we do have a video record of. Well, the question is, was it a serious underlying offense? Yes or no? The underlying offense was self-defense against a serious injury of a weapon. Counsel, that's not an offense. Why can't you say, no, the underlying offense was not serious, but, and fill in whatever you want to after that. Absolutely. No driver's license is not a serious offense. Was he attempting to flee, Mr. Lawrence? He was resisting arrest. But he was not attempting to flee, right? Right. He was not attempting to flee the scene. No, sir. No, sir. He was avoiding arrest, and that's one of the factors under Graham v. Conner, whether it's a serious offense, whether the threat of force is serious, and whether or not you're resisting arrest or attempting to flee. Peter. But interestingly, he was, even though he was resisting arrest, certainly by no means was this guy a model citizen during this arrest procedure. But he wasn't physical at all. I mean, he was resisting, but he wasn't hitting anybody or punching anybody. I mean, he was just trying to, and I'm not justifying that, but I think there may be a difference between trying to resist getting arrested, right, defensively maybe, and offensively striking out and physically trying to prevent the officers by some kind of force, offensive force on the part of the person being arrested. I mean, you would agree he was not engaging in. Absolutely, absolutely. And that's why this court has consistently held that the moment in time, the crucial moment in time to assess the reasonableness of use of force is the moment it's applied, not whether or not the man had a driver's license, not whether she spent 12 minutes trying to argue with him or demand to see it, not the two minutes that they stood there wrestling and he was saying no, no, no, but the moment. Well, he said stop, stop, stop too, didn't he? He continuously said stop, stop, stop from the second that they attempted to handcuff him. But actually, so you agree then, I think you've just said you agree, that there's a difference between not wanting to be arrested and trying to avoid being arrested and physically striking out. And so if there is a material issue of fact then over whether he was just trying to present himself, from being tased, drive stunned or whatever, yet again as he was yelling out, don't do it, don't do it, stop, then that would be enough to survive summary judgment. If he hadn't dropped the taser, if there wasn't evidence that he had possession of the taser, if he had strictly just dropped it. You keep saying he dropped the taser. Yes, sir. They didn't shoot him because he dropped the taser. No, sir. He dropped it when he was shot. When the moment he grabbed that. You said if he hadn't dropped the taser. Right, it shows that he had. Oh, if he hadn't had the taser, is that what. He would have dropped it. Right. So, on that date, that officer was faced with a person who was defiantly denying her authority to request a driver's license. She didn't shoot him for that. Just for purposes of my understanding your argument, I understand your position is he had the taser and we know that because he's the one who dropped it. That's your position, right? That's part of the position. I understand. But let's assume the facts are different, okay? Let's assume that all the video shows in a light most favorable to him is that he's trying to prevent himself from being tased as opposed to that he has control of the taser. In that case, you would agree there's a material issue of fact that survives summary judgment. I do not agree that that's the case here because what I do agree to is that throughout the time that he was resisting arrest and while she was tasing him, she kept on, she kept on, she kept avoiding him trying to block it and tase him. And then he would avoid blocking it again and she tased him. He could tell that blocking it was not doing it. Okay, I understand. But you're arguing with the premise of my question, okay? I'm asking you to assume different facts. I understand your position is that's not what happened. And I may agree with you that that's not what happened. But I'm asking you to assume the fact that what happened was in the light most favorable to him, the video could be viewed as him doing nothing more than trying to prevent her from tasing him. Would you then agree with me that it would survive summary judgment? I do not agree. And that's what I'm asking you, why? I do not agree. If that were the case, my argument would be, if those were the facts in this case, I would say that at this point in time when she used that force, she was down to two options. She could wait and hope for the best or she could eliminate the threat in the only way she had available. But why is there a threat if all he's doing is trying to prevent her from shooting him? I thought you told us earlier that the only moment when she's authorized to use force is when he's using force against her, when he presents a threat to her. And if all he's doing is trying to prevent himself from being tased, how does he present a threat of force to her? In this situation, putting myself or asking this court to put themselves in the shoes of her in that situation, given that there's no clearly established law of any case, any spotted hog case, then you're going to have to go with some obvious clarity. In those kind of cases, those cases must involve facts that are so outrageous as to go far beyond any hazy border between excessive and acceptable force. It's an objective standard. An objective standard that a reasonable officer would say, I have to use deadly force to protect myself or somebody else because there's a real danger. And where is it here? That's the question. And if you go... Where is it here?  That's subjective, Bill. Okay. Based on the same factors, say, for example, where in Gilmour. Take Gilmour. Their best case. This court said that an objective factor is whether or not this person is older, stronger, their sobriety, their complicity. Those are all objective factors. And their strength. And also in this case, you have the objective factor of someone who was hell-bent and determined in not cooperating and would never cooperate under any circumstances. Well, you're saying that, but again, that's an inference you're drawing. And it's not an inference in favor of the plaintiff. And apparently that's what the district court inferred as well. Well, sir, I think it's a reasonable inference. That's not the proper way to draw the inference, as you know. Well, I'm not talking about inferences here. I'm talking about objective facts as to the strength and the... Well, the strength of this man who fought an officer who was a lot larger until he couldn't hardly stand it. Let me ask you about Judge Baker's recommendation, report and recommendation. What do you find is erroneous in that report and recommendation? Well, there are some that are pretty glaring. And to say that there's no such thing as a circumstantial evidence case in order to provide probable cause is one thing I found was erroneous. And in other words, to pull the rug out from under the entire confrontation because the man sitting there in the driver's seat with the keys in the ignition telling him he's going to leave, there's no reason to believe that the man... If Woodruff had been the only officer on the scene and Mr. Lawrence had said, I don't have a driver's license, I don't need one under whatever, I'm going to get in this car and leave. And she told him not to. And he starts to get in the car and he's clearly stronger and bigger than her, younger or whatever. And she shoots him to keep him from getting in the car and leaving. That's clearly established to have been a violation, right? That is an obvious clarity case. Okay. So I think in most minds, your argument has to be that this is a different case because they had the right to arrest him and when they tried to arrest him, he resisted with physical force. And it escalated from a mere failure to have a driver's license to resisting arrest, obstructing the officers, assaulting the officers, whatever you want to call it. Yes, sir. That's your argument? Yes, sir. Okay. All right. Thank you. Ms. Cody, three minutes. Do you want to go straight to the next one? I'm good. Whatever you want. Do you want to go straight to the next one? No. Your Honor, if there are no further questions from the court, we ask that this court reverse the district court because there is a clearly established violation of the Fourth Amendment here. Based on existing case law, Mr. Lawrence had the right to be free from the use of deadly force in this situation. If there are no further questions, that's what you're asking. I suspect if there are further questions, you ask the same thing, don't you? Yes, I do, Your Honor. All right. I note, of course, that this was from the William & Mary Clinic and we very much appreciate y'all's undertaking this. I assume pro bono and you did a good job. We appreciate it. Thank you. Next case up is Mason v. Midland Funding. Pretty interesting cases. Yes. Thank you.